Argument not to exceed 15 minutes per side. Mr. Germany, you may proceed for the appellant. May it please the court, I'm Dan Jarmian. I represent Mr. Drew in this case. I'd like to reserve five minutes, or three minutes, if you prefer. Very well.  I'm going to issue the third issue, in this case, the alimony errors. As your honor has noted, the Supreme Court has not yet put a covenant on alimony errors for us. Therefore, we understand that your hands are tied as well. So we're just going to preserve that issue and bring that to the Supreme Court in the future. With regard to the sufficiency of the evidence issue, we would submit that to the court. We certainly will answer the questions that you have. We think that it is a real issue in this case. What I would like to focus on is the identification of clothing, whether that's an identification of a due process violation under the law. As your honors know, in this case, a robbery of a convenience store took place a short while later. Mr. Drew was taken into custody by the police. A photo was taken of him. The photo only showed his lower portion of his body. It did show his neck. From his neck down, it did not show his face. The clerk at the store had told the officers before they had taken the picture that he didn't see the face because there was a mask involved. That's why the police took that precaution. Nevertheless, we believe that under the law that it was an identification because not only did it show the race of the individual, who was black, you can also tell the build, you can also tell the height. Therefore, because they never clearly identified the face, it was an identification for all intents and purposes under the law. You would have us analyze it as if they could have seen his face, just like any other identification? Right, and of course, it's a two-factor test. First, is it suggestive? Second, is it reliable? Of course, five factors are going to be reliable, the biggest factors. So they shouldn't have shown him a picture of like five different planned shirts? I mean, how would they have made it so that it wasn't suggestive? Our position is that the police, although they took some precautions in this case, they could have just simply undressed Mr. Drew in the sense of taking his jacket off, brought his jacket into the clerk and said, is this the jacket that the defendant was wearing? And that would have been much less suggestive than actually taking a picture of someone with their hands crumpled behind their back, which is what the victim testified he believed was the case. Also, right in front of a police car. Let's say they wanted to know whether they had the right dive. So what should they have shown the person? Just the jacket? Should they have taken pictures of other people in some sort of a planned top? I mean, he's identifying the jacket, right? So I'm just asking you, what would they do to avoid being suggestive? And again, I think that what I said is I think they could have easily just taken the jacket off of Mr. Drew, brought it into the clerk and said, is this what the perpetrator was wearing? I think that that would have been a better solution than actually taking it. Well, if I may, this case strikes me as different from a case where in kind of a more clinical setting later they show a lineup to somebody. As I understand the sequence here, they show this neck down photograph to Mr. Harris. I mean, this is like minutes after they caught the defendant, I guess, by the side of the road. And at that point, I mean, they really have an exigency, which is we need to make sure we have the right guy because otherwise there's another guy running around with snub-nosed people that we need to worry about. And so they don't have time for some elaborate procedure with a bunch of different flat shirts. And it would be just as if they brought, if he could have seen the robber's face, bringing the guy into the store and saying, is this the guy who robbed you? I mean, would that be impermissible under due process? I mean, we just caught this guy. Is this the guy who robbed you? Well, they have to bring six guys. Your Honor, I would concede that some of the case law in the Sixth Circuit is not great. In fact, the Robert Drew case that the government has cited is actually the Robert Drew from this case. And I believe it's Drew v. Parker cited in their brief. And of course, in that case, it was a habeas case. It was a little bit different analysis. But in that case, I'll concede that the defendant, Mr. Drew, he's saying Mr. Drew, was actually brought into another contingent store. It was a death case. He was actually brought in, which I think it was two hours in that case. And he was brought into the store in the Sixth Circuit, found that that was permissible. Again, it's a little different analysis, because that was a habeas context, as opposed to just direct appeal, as this case is. Certainly, that case is not in our favor, but it's not necessarily the spot. Well, but I mean, again, to go back to Judge Lloyd's point, what are they supposed to do? I mean, you would agree, they do have a need to find out whether they apprehended the right person. There is an interest in that. That's one of the factors. Basically, I think that the courts can look at, you know, was there a short time that passed? And certainly that would weigh against us in that context. But we understand that the law in the Sixth Circuit at this point is what it is. And in the Drew case, especially not mid-courts, as well as some of the other cases, were there alternatives in this case? Yeah, I mean, I'm open to hearing what they are, because this, it seems, did not have a prosecutorial purpose so much as it had a public safety purpose. We think that in this case... So what alternatives would they have? I think what could have been done, and I hate to repeat myself, is simply in this case, they could have taken the jacket off, brought it into the convenience store, and said, is this the clothing that was worn by the perpetrator? I mean, the jeans were part of it, too, though. I understand. Basically, this is, I mean, that's what the clerk in the store saw. And to the extent we're taking away information about Bill and about what the clerk just saw, we're degrading the reliability of their conclusion as to whether they got the right jacket. That's a danger, isn't it? I understand. But I think that in this case, there were alternatives, and they could have actually brought that jacket in. And that's what makes it a little bit different than the other cases. In addition, there was a video in this case that they could have looked at themselves to determine what the defendant was wearing, as opposed to actually taking a picture of the individual in front of the police car with his hands behind his back. Couldn't the police have just said, can we see the video to determine that Mr. Drew is, in fact, the individual? What happens is, now you have an identification that happens of him wearing the clothing. And therefore, it's going to affect his future testimony. When you look at what he first told the police officers, he said, I'm not sure what he was wearing. He was wearing a thick coat. And you get this expression underneath, he detailed it a little bit further. I believe he detailed the color of the coat. It was black, and I think it was black and blue. So he added a little bit to it. And of course, after the trial, he went a step further and said, not only could he tell the exact color of the jacket, he could actually see the emblem. And so what that creates is, all of this could have been avoided had they just simply brought in the jacket and said, is this the jacket that the perpetrator was wearing? And then, instead of actually putting it in front of the police car. I just think that's what created the confusion. Of course, you know, and I will concede, in this case, the Drew case, I'm sure the government will come up here and talk about, he was actually in the back of the police car. So that is certainly not a great back for us in the analysis, because what we're trying to say is that this clothing should have been, this individual should have been filmed in front of the police car, because it's a judgment. On the other hand, presumably, they have a right to say, we just caught this guy. You know, is this the guy? So putting him in front of the police car is not really news. That's the context of this conversation. And I understand your argument, but in order for identifications in general, when you look at what's happened with the DNA and clearing people, misidentification is the number one culprit of wrongful convictions. And when you can take steps to try to clear people, misidentifications, it is a better process. And that's all I have at this point in time. All right. Thank you. May it please the Court, David Biggers on behalf of the United States in this case versus Robert Drew. This court should find that the constitutional due process protections do not apply to clothing identifications, that there was sufficient evidence for the reasonable jury to find that the defendant did in fact commit the attempted armed robbery at the KFC restaurant, and that the Armored Criminal Act does not require the government, or did not require the government to prove the defendant's 12 prior robbery convictions beyond the reasonable doubt to a jury and affirm the conviction in this case. Going to the first point, the government submits that the identification of the culprit, specifically Jack, did not implicate the two-step analysis conducted by courts to make the determination as to whether or not an identification was not just suggestive, procedures for identification was not just suggestive, but either unduly or impermissibly suggestive. This particular case only involved a brief review of the facts. It involved a review by Mr. Harris, the African-American clerk at the Hickory Center Market, looking at a photograph. Officers, he was robbed, an attempted robbery occurred at the Hickory Center Market. He called the police. Within two minutes, Sergeant Maxwell was at the Hickory Center Market. He immediately ran into the store, spoke to Mr. Harris. Mr. Harris gave him a clothing description. This was not the kind of actual written statement provided to law enforcement. Mr. Harris simply told him the color of his clothing and explained to him that he did not see his face because he was wearing a black mask and wearing a black bra. Sergeant Maxwell immediately left the store. Mr. Sonny told him that he saw the suspect on Highway 196, which is less than 1,000 yards from the Hickory Center Market. Sergeant Maxwell radioed the information out to other officers and went to that area. He passed the area where the defendant was found and did not see him. A car following shortly behind him, occupied by Sergeant Atkins and Officer Clark, had a spotlight where Officer Clark was able to look and point it on the area to the roadside where they saw the probably defendant laying face down attempting to hide in the woods. The defendant was apprehended, found to be wearing a similar clothing to that provided by Mr. Harris. Sergeant Maxwell went back to the store after the fire was recovered. The defendant did not enter the store. The defendant at no point was taken inside the store. At no point did Jerry Harris, the clerk, come outside the store and see the defendant. The officers went above and beyond the government's opinion of what was required by the law and took a photograph only depicting the defendant from the neck down to the waist around approximately the waist area. They did that. They made that intentional decision to avoid showing the defendant's face. In the event that Mr. Harris said, no, that's not the jacket, it wouldn't be a situation down the road that somehow the defense counsel or someone representing either Mr. Drew or someone else would be able to argue that it was tainted because at no point did Mr. Harris see his face. The officers knew he didn't see his face, so they showed him the face of a man that possibly he could not recognize. Could he determine the gentleman's race from the photograph? He could determine the race from the photograph. I'll point out that Mr. Harris notified police, Sergeant Maxwell specifically, on that initial encounter. He came in and asked for a search, but then it was an African-American man. So that was not something inconsistent with the earlier information provided to the police. The purpose of this is that the fact that he saw the neck of an African-American did not do anything, it was not suggested in any manner. If you look at the case decided by the defense counsel, suggesting that this was an identification for the purpose of two separate counts, Vickerson, Brathwaite, and Sullivan, all of those cases deal with actual suspect identification, specifically a witness or a victim saying that, yes, that person is the person that robbed him. In this case, that's clearly not the situation. Mr. Harris testified both in the suppression hearing and in the trial that he couldn't say who he really was that robbed him. All he could tell from looking at that photograph was that that was the jacket worn by the person who committed the robbery. Even if the court were to find that this case did deal with that identification and identification of clothing, I think it was used as two separate answers. Vickerson said it is not unduly suggested or impermissibly suggested to show that photograph or procedure in which the photograph was taken. The defense counsel argues that it is somehow unduly suggested because the defendant was standing in front of a police guard at the time. As the defense counsel pointed out, very rarely do we have an opportunity to cite precedent that involves the actual appellate before the court. And he is correct in that the Hargrove v. Drew case did deal with the actual defendant, Robert Drew, in a prior arrest where he was presented to a victim in a show of identification while seated in the back of a police car. This court found that that was not unduly suggested under the circumstances of that case, which are similar to this case in that there was an exigency and an immediacy to obtain and apprehend the correct person. For some reason, the court found that this was not unnecessarily suggested and moved to the five factors as articulated in Vickerson, specifically the opportunity for Mr. Harris to see the criminal at the time, see and observe the jacket at the time, Mr. Harris' degree of attention to the jacket, after Mr. Harris' description of the jacket, the level of certainty demonstrated when confronted with a shown photograph and the length of time between the crime and the identification of the jacket. In other words, we find that Mr. Harris was reliable in that regard. Even if, for some reason, the court found that it was either unduly suggested or unreliable, it would be harmless here. As the defense counsel cited in the brief on page 30, we can see that not only did we have this photograph, but there was also video. The jacket itself was also presented and admitted in the evidence, so it would have been harmless there. We'll note, just for the record, that Mr. Harris, in pointing out the emblem, the emblem referred to throughout the trial, on the jacket, Mr. Harris did not volunteer that information. That was something he was asked specifically about by the prosecution in the trial, just to ask whether or not he observed that. Mr. Harris at no point volunteered that information at all, and he was not presented in such a to the jury. For those reasons, the court has submitted the conviction for reproduction to the jury. Thank you for your time. Briefly, Your Honor, the magistrate put forward a court recommendation that the district court ultimately adjourn the trial after the Johnson case, and we simply submit that the Johnson case is distinguishable from this case. That case involved simply the clothing that was laid out and the picture was taken. This case is a little bit different. It's sort of a hybrid situation where it's not quite at the identification of the person because the defendant's face was cut off. However, he was in the picture, and you can't identify his race, you can't identify his build, you can't estimate the height because he's standing next to a police car, and therefore, Your Honor, since it was a show, as opposed to a wind-up, we understand that the law is what it is with regard to the time constraints and the difficulties and options we have. Nevertheless, we rely on the arguments that we have made in the briefing tonight. That's all I have. Thank you. Thank you. This case is adjourned.